**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,

v.   CRIMINAL ACTION NO. 2:09-cr-00222-16

ERIC WAYNE LYTTLE,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant Eric Wayne Lyttle was named in Count Ten of an indictment returned by the grand jury on October 6, 2009. Count Ten charges Defendant with threatening to commit a crime of violence in aid of racketeering in violation of 18 U.S.C. § 1959(a)(4), or aiding and abetting the same in violation of 18 U.S.C. § 2. Defendant appeared before the Court and entered a plea of guilty to Count Ten on October 27, 2009. On August 16, 2010, Defendant filed the instant Motion to Withdraw Plea of Guilty [Docket 2147]. Defendant misreads the Court's June 3, 2010, memorandum opinion and order [Docket 1710] in making his motion, and accordingly the motion is **DENIED**.

*I. BACKGROUND*

Defendant is a member of the Last Rebels Motorcycle Club ("LRMC"). The LRMC is a support club for the Pagans Motorcycle Club ("PMC"). Support clubs are motorcycle clubs operating within the PMC's territory with the PMC's permission. As a support club, the LRMC is obligated to perform any task assigned by the PMC, even if that task involves engaging in unlawful activity. Sometime in April of 2008, PMC national vice president Floyd Moore issued orders to the LRMC

that they were to shut down a small motorcycle riding group called Next to Kin.  The Next to Kin had been formed by several motorcycle enthusiasts as a "family-oriented riding group" for the purpose of going on rides together.  Its membership consisted of two married couples and three of their friends.  The teenage son of one of the couples had designed a logo for the group, and the members ordered custom-made vests with the logos.  The Next to Kin's offense against the PMC was not obtaining proper permission to form a motorcycle club in PMC territory.

The LRMC discussed Moore's orders at their next weekly meeting on April 5, 2008.  Orders were given to the LRMC's members that they were to be on the lookout for the Next to Kin.  If they encountered the Next to Kin on the roads, they were to "take their patches"—that is, strip them of any insignia of the club and order them to dissolve the club.  These orders were included in the minutes for the meeting.

Shortly thereafter, Defendant, along with co-Defendants Jett, Massey, Peters, and James Lyttle, were riding their motorcycles in Racine, West Virginia.  They spotted several motorcyclists pulled over in a supermarket parking lot.  Thinking they were other LRMC members, the group headed towards the other motorcyclists.  There they encountered four members of the Next to Kin—the two couples—waiting for two other people who would be joining them for a motorcycle ride.

Eric Lyttle, who is known as "Tree" due to his towering stature, dismounted his motorcycle and demanded that one of the Next to Kin members, Scott Smith, come speak to him.  Peters and James Lyttle were standing next to Eric Lyttle.  Peters admitted that he assumed a threatening posture, and Smith observed that James Lyttle was carrying a firearm.  Jett was nearby, but he did not dismount his motorcycle.  Jett and Peters admitted that their role in the incident was to be part

of the show of force. Massey stood behind Scott's wife, April Smith, taunting the group. According the testimony of April Smith and Eric Lyttle, Massey was asking the Next to Kin members if they "wanted to start something" and telling them that he "ain't scared to whoop nobody." Eric Lyttle demanded that the Next to Kin turn over their vests to him. Eric Lyttle testified that he gave Scott Smith an ultimatum: he could turn over the Next to Kin vests on the spot or Lyttle would tell the Pagans and the Next to Kin members would "have hell to pay." April Smith approached Defendant Eric Lyttle and her husband. Scott Smith told her to hand over her vest to Lyttle. He then told her to call the police. Eric Lyttle warned him, "That would be the worst thing you could do." Scott Smith then directed the other couple to hand over their vests to Eric Lyttle.

With vests in hand, the LRMC members left. The incident was memorialized in the minutes of the LRMC's April 19, 2008, chapter meeting. All five LRMC members involved, including Defendant, were charged with offenses in connection with the confrontation with the Next to Kin. Defendant pled guilty to Count Ten of the original indictment, which charged him with threatening to commit a crime of violence, or aiding and abetting the same, in violation of 18 U.S.C. § 1959(a)(4) ("VICAR") and § 2. The predicate crime of violence is cited as W. Va. Code § 61-2-9.

Each of the LRMC defendants involved in the Next to Kin incident entered into plea agreements with the Government. Stipulations of fact were attached to each plea agreement for the purpose of establishing the factual basis for the offenses. Relying largely on the stipulation of facts, the Court found a basis in fact for Defendant's plea at the conclusion of his plea hearing on October 27, 2009. In response to factual basis concerns in related cases, the Court initiated a thorough review of the law underlying Defendant's guilty plea. The Court's discussion was made available in its June 3, 2010, memorandum opinion and order [Docket 1710]. Relying on a misunderstanding of that

memorandum opinion,[1] Defendant filed the pending Motion to Withdraw Guilty Plea on August 16, 2010.

## II. DISCUSSION

Count Ten charges Defendant with threatening to commit a crime of violence in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(4). The predicate crime of violence is identified as West Virginia's assault and battery statute, W. Va. Code § 61-2-9. W. Va. Code § 61-2-9 covers a number of offenses, including assault, battery, malicious wounding, and unlawful wounding. It states, in pertinent part:

> (a) If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall . . . be guilty or a felony . . . .
> (b) Assault. If any person unlawfully attempts to commit a violent injury to the person of another or unlawfully commits an act which places another in reasonable apprehension of immediately receiving a violent injury, he shall be guilty of a misdemeanor . . . .
> (c) Battery. If any person unlawfully and intentionally makes physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally causes physical harm to another person, he shall be guilty of a misdemeanor . . . .

W. Va. Code § 61-2-9. Subsection (a) corresponds to the elements of a battery-type assault with a dangerous weapon. *See State v. Gibson*, 68 S.E. 295, 295-96 (W. Va. 1910). Subsection (b) mirrors

---

[1] Defendant first argues that he cannot be convicted of threatening to assault the Next to Kin members because, according to this Court, assault without resultant bodily injury or the involvement of a weapon is not a crime of violence under VICAR. In making his argument, Defendant cites a portion of the Court's June 3, 2010, memorandum opinion dealing expressly with assault with a dangerous weapon in violation of 18 U.S.C. § 1959(a)(3). While that discussion concerns the same West Virginia predicate statute, Defendant is not charged with assault with a dangerous weapon in violation of 18 U.S.C. § 1959(a)(3). Instead, he is charged under 18 U.S.C. § 1959(a)(4) with threatening a crime of violence, namely state law battery. 18 U.S.C. § 1959(a)(3) expressly requires the assault to be "with a dangerous weapon" or "resulting in serious bodily injury." 18 U.S.C. § 1959(a)(4) has no similar requirement, and the Court's prior opinion did not impose one.

the definition of common law assaults, or attempted batteries. Subsection (c) refers to simple batteries and unwanted touchings, as well as intentional physical harm.

The term "crime of violence" is defined, in part, for federal offenses as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). In determining whether an offense is a crime of violence, the Court first looks to the elements of the offense rather than to the nature of the conduct by which the accused allegedly committed the offense. *See Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004); *see also United States v. Aragon*, 983 F.2d 1306, 1311 (4th Cir. 1993). The Court previously held that, while W. Va. Code § 61-2-9 cannot be classified categorically as a crime of violence under 18 U.S.C. § 16, the "intentionally caus[ing] physical harm to another person" clause of subsection (c) constitutes a crime of violence and a sufficient predicate offense under VICAR. *See United States v. Barbeito*, No. 2:09-cr-222, 2010 WL 2243878, at *54-55 (S.D. W. Va. June 3, 2010); *accord Hernandez v. U.S. Atty. Gen.*, 513 F.3d 1336, 1341-42 (11th Cir. 2008) ("[A] simple battery conviction under Ga. Code Ann. § 16-5-23(a)(2), for '[i]ntentionally caus[ing] physical harm to another,' constitutes a 'crime of violence' under 18 U.S.C. § 16(a)."); *Lopes v. Keisler*, 505 F.3d 58, 61, 63 (1st Cir. 2007) (holding that simple assault under Rhode Island law satisfies the statutory definition of a crime of violence because it has as an element the "attempted use, or threatened use of physical force against the person or property of another" as required by 18 U.S.C. § 16(a)).

Defendant's stipulation of facts supports a finding that he threatened to commit a battery against the Next to Kin members. In clear terms, the stipulation states: "The members of the LRMC threatened violence against the members of the Next to Kin if they did not turn over their jackets . . . ." The stipulation of facts continues to state that the Next to Kin members turned over the jackets

5

only after "an argument and threatened hostilities."[2] From these facts and the additional facts set forth above, it is apparent that Defendant played an integral role in threatening the Next to Kin members with intentional physical harm, as prohibited by W. Va. Code § 61-2-9(c). In plain terms, Defendant threatened a battery under West Virginia law, which federal law considers a crime of violence for VICAR purposes.

Defendant argues that the only offense under W. Va. Code § 61-2-9 for which he can be adjudicated guilty is assault because he made no physical contact with any of the alleged victims.[3] The assertion that no physical contact occurred may be true, but it is misguided. Based on these facts, Defendant indeed probably could be convicted of assault under West Virginia state law. Furthermore, because Defendant made no physical contact with the Next to Kin members, a conviction for state law battery is unfounded. However, whether or not Defendant can be charged with consummating the state law offense of battery is irrelevant. Defendant can be convicted of a VICAR offense for threatening the state law offense of battery as defined in W. Va. Code § 61-2-9,

---

[2] Courts construing statutes analogous to § 1959(a)(4) provide guidance for what amounts to a threat as opposed to a lawful communication. A threat need not be explicit or direct, so long as the person receiving the communication reasonably understands its threatening meaning. *See, e.g., United States v. Napa*, 370 F. App'x 402 (4th Cir. 2010) (unpublished) (finding email containing quotes from and references to Virginia Tech shooter, Seung-Hoi Chu, sent to survivors of attack to be threats); *United States v. Thai*, 29 F.3d 785, 819 (2d Cir. 1994) (construing demand for free beeper service as threat where previous unmet demand for free service resulted in robbery). Furthermore, for statutes criminalizing threats, it generally is immaterial whether the defendant actually intended to carry out the threat. *United States v. Darby*, 37 F.3d 1059, 1064 n.3 (4th Cir. 1994) (collecting cases interpreting various statutes prohibiting threats). The LRMC placed the NTK in a threatening situation by their actions on the day in question. Eric Lyttle's stance, tone, and demands, coupled with the taunts and actions of the other LRMC members, amounted to a threat to commit violence against the NTK members, even if Lyttle's threat was not spelled out in plain english.

[3] The term "assault," as used here, refers to placing an individual in apprehension of immediate physical contact or harm.

because that state law offense meets the definition of a crime of violence under federal law. *See* 18 U.S.C. § 16(a).

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Withdraw Guilty Plea [Docket 2147] is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: December 15, 2010

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE